UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SARAH K. WILLIAMS,

                Plaintiff,

v.                                          Civil Action No. 3:10–CV–700

W. R. BRUMBAUGH,

                Defendant.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on the Motion for Summary Judgment filed by Defendant W. R. Brumbaugh and the Motion for Dismissal Without Prejudice filed by Plaintiff Sarah K. Williams. (Doc. Nos. 14, 25). For the reasons stated below, the Court will GRANT the summary judgment motion and DENY the motion to dismiss.

## I. BACKGROUND

### A. Factual Background[1]

At approximately one o'clock on the morning of October 13, 2009, nineteen-year-old Sarah Williams was seated in the front passenger's seat of a car parked in the lot of a Wawa convenience store in Chesterfield. Williams's friend, Pedro Lopez, was in the driver's seat.

Chesterfield County Police Officer Kevin Rollins ran the plates on the vehicle and learned that the owner of the vehicle was wanted for criminal violations. After observing

---

[1] The Plaintiff failed to timely file her response to the Defendant's summary judgment motion. (Order, Doc. No. 24). Accordingly, the facts presented in the Plaintiff's List of Undisputed Facts are deemed undisputed for purposes of this motion. Fed. R. Civ. P. 56(e).

1

that Lopez fit the description of the vehicle's owner, Officer Rollins pulled his police vehicle behind the vehicle in which Lopez and Williams were sitting. Officer Rollins approached the driver's side of the vehicle and asked to see Lopez's operator's license. Officer Rollins learned that Lopez was not the owner of the vehicle and released him.

While Officer Rollins was talking with Lopez, Williams was speaking over him and interrupting his questions. Officer Wayne R. Brumbaugh, who had arrived at the convenience store in a separate police vehicle, approached Williams while she was interrupting Officer Rollins and asked her to identify herself. Williams showed Officer Brumbaugh her operator's license and informed him that it had been revoked.

After going to his police vehicle to confirm that Williams's operator's license had been revoked, Officer Brumbaugh wrote Williams a summons to appear in traffic court on the misdemeanor charge of knowingly possessing a revoked driver's license.[2] While Officer Brumbaugh was filling out the summons at his police vehicle, Williams left the passenger seat and sat on the trunk of the vehicle she had been sitting in.

Officer Brumbaugh returned to the vehicle and handed the summons to Williams. Williams signed the summons, which included on its face a promise to appear in traffic court to answer the charges. Williams, who was upset at having to pay a fine, then told Officer Brumbaugh that she was not going to court to respond to the summons. Officer Brumbaugh then placed Williams under arrest.[3]

---

[2] Knowingly possessing a revoked operator's license is a class two misdemeanor in Virginia. Va. Code Ann. §§ 46.2-346, 46.2-350.

[3] If an arresting officer believes a person is likely to disregard a summons, the officer may detain the person and bring her before a magistrate. Va. Code Ann. §§ 19.2-74(A)(1), 19.2-82.

When Officers Rollins and Brumbaugh reached for Williams's arm to place her under arrest, she started swinging at the officers and kicking at Officer Brumbaugh. She slid off the trunk of the car and hit Officer Rollins. Williams is six feet tall and weighed approximately 180 pounds at the time of this incident.

Several times, Officer Brumbaugh ordered Williams to get on the ground and put her hands behind her back. Williams did not comply with Officer Brumbaugh's commands, instead backing away from him. Officer Brumbaugh then sprayed pepper spray in her direction, but Williams covered her head to shield herself from the spray.

A Wawa employee, Patricia Breeden, saw Williams and Officer Rollins standing by the side of the car. At a later point, she saw Williams approaching the two officers while swinging her hands. She then saw Williams get pepper sprayed. Breeden told her coworker, Mary Anne Powers, to look at Williams swinging at the police officers. When Powers turned to look, she also saw Williams's "hands swinging."

When Williams continued to refuse to comply with Officer Brumbaugh's commands to get on the ground and put her hands behind her back, Officer Brumbaugh sprayed her a second time with the pepper spray. She then complied with Officer Brumbaugh's command and was handcuffed, taken into custody, and placed in the police car. Williams did not have any visible injuries and did not require medical treatment or transport following her arrest.

Williams was taken to a magistrate, who found sufficient facts and evidence to constitute probable cause and, therefore, issued a warrant for Williams's arrest for assaulting Officer Rollins in violation of Section 18.2-57 of the Code of Virginia. On April 15, 2010, Williams had a preliminary hearing in the Chesterfield County General District Court, where the court found that probable cause existed on the charge of assaulting a police

officer. A grand jury also found that probable cause existed and issued a true bill on May 17, 2010. Williams was acquitted of the charge by a jury on July 14, 2010.

B. **Procedural Background**

The Plaintiff filed this action against Officer Brumbaugh in September, alleging excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and assault and battery. The Defendant filed a motion for summary judgment in February, and the Plaintiff failed to respond by the deadline. Following a hearing on the Plaintiff's untimely motion for an extension to respond and the Defendant's motion to strike, the Court denied the Plaintiff's request and informed the parties that it would decide the unopposed motion for summary judgment.

## II. **MOTION TO DISMISS**

On April 19, the Plaintiff filed a motion to dismiss, asking the Court to use its authority under Rule 41(a)(2) of the Federal Rules of Civil Procedure to dismiss this action without prejudice so that the case may be tried on its merits. The Plaintiff, who acknowledges that her counsel's procedural error left the Defendant's motion for summary judgment unopposed, argues that the Court should dismiss this action because prior to the implementation of the Federal Rules of Civil Procedure, federal courts were required to allow plaintiffs to take voluntary nonsuits at any stage of litigation under the Conformity Act of 1872, ch. 255, § 5, 17 Stat. 197.

A. **Applicable Law**

Rule 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers

proper." A court deciding a motion for voluntary dismissal should consider: "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation." *Howard v. Inova Health Care Servs.*, 302 Fed. App'x 166, 178-79 (4th Cir. 2008) (internal quotation marks and citations omitted).

Dismissal under Rule 41(a) is limited to those instances where minimal prejudice will result to the defendant. *See Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987) ("In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant."); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) ("Rule 41(a)(1) was designed to curb abuses of [] nonsuit rules.").

**B. Discussion**

Dismissing the case without prejudice while a summary judgment motion is pending would prejudice the Defendant, who has expended considerable effort to respond to the deficiencies in the Plaintiff's pleadings and to prepare his case for summary judgment and trial. Furthermore, allowing the Plaintiff to restart this litigation because she missed a key deadline would absolve the Plaintiff from her previous failure to comply with deadlines.

In addition, the Plaintiff's reliance on the Conformity Act is misplaced. That act, which required federal district courts to apply the procedural rules of state courts, was repealed in 1934 with the implementation of the Federal Rules of Civil Procedure pursuant to the passage of the Rules Enabling Act, ch. 651, §§ 1-2, 48 Stat. 1064 (1934) (current version at 28 U.S.C. § 2072). The Court will not simply pretend that the Federal Rules do not exist.

Finally, the Plaintiff chose to file this case in federal court and therefore voluntary subjected herself to its procedural rules and deadlines. It is abundantly clear that deadlines are mandatory and that a procedural error or miscalculation by counsel does not warrant exception. *See* Loc. R. Civ. P. 7(I) ("Any requests for an extension of time relating to motions must be in writing and, in general, will be looked upon with disfavor."); *Key v. Robertson*, 626 F. Supp. 2d 566, 577 (E.D. Va. 2009) ("'[i]gnorance of when a time period expires does not qualify as excusable neglect, nor does a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity'" (quoting *Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.*, No. 3:06–CV–264, 2006 WL 1720681, at *4 (E.D. Va. June 20, 2006))).

For these reasons, the Court DENIES the Plaintiff's motion for dismissal without prejudice.

### III. **MOTION FOR SUMMARY JUDGMENT**

#### A. **Legal Standard**

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). "[I]f the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment should not be granted, however, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a motion for summary judgment is unopposed, "the moving party must still show that the uncontroverted facts entitled the party to a judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (internal quotation marks omitted).

**B. <u>Discussion</u>**

**1. § 1983**

The first inquiry in addressing a claim of excessive force under § 1983 is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). A claim of excessive force in the context of an arrest implicates the Fourth Amendment's guarantee that citizens shall "be secure in their persons . . . against unreasonable . . . seizures." *Graham v. Conner*, 490 U.S. 386, 394 (1989). A court considering an excessive force claim under § 1983 must apply an objective reasonableness standard to analyze the officer's actions. *Id.* at 388. In doing so, the court

"examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances." *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994).

In *Graham*, the Supreme Court held that an analysis of excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. When a suspect is resisting arrest, the use of pepper spray to effect the arrest may be reasonable. *See Brown v. City of Huntsville*, 608 F.3d 724, 739 (11th Cir. 2010) ("[T]he use of pepper spray is not excessive force in situations where the arrestee poses a threat to law enforcement officers or others, uses force against officers, physically resists arrest, or attempts to flee . . . ."); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("[P]epper spray is a very reasonable alternative to escalating a physical struggle with an arrestee.").

Considering the facts as set forth by the Defendant and resolving all rational inferences in favor of the Plaintiff as the nonmoving party, the Court finds that Officer Brumbaugh's use of pepper spray in arresting Williams was objectively reasonable. To arrive at this conclusion, the Court reviewed the Defendant's unopposed summary judgment motion and its accompanying memorandum, the transcript of testimony in Williams's criminal case, a video of the incident, and other documents submitted by the Defendant.

That evidence shows that Officer Brumbaugh reasonably believed that Williams was assaulting Officer Rollins, that Williams resisted arrested, and that Officer Brumbaugh did

not pepper spray Williams after she complied with his demands. Specifically, both Williams and Officer Brumbaugh testified that Williams came off the car after being told she was being arrested. (Tr., Doc. No. 14, Ex. A, at 10, 62). Additionally, the testimony of Officers Brumbaugh and Rollins, as well as that of two Wawa employees, shows that Williams's hands were swinging during this incident. *Id.* at 9-11, 26-27, 41-42, 46. Officers Brumbaugh and Williams also testified that Williams kicked at Officer Brumbaugh and flailed her arms and fists when told she was being put under arrest. *Id.* at 9-11, 26-27. Officer Rollins testified that during this incident, Williams "grazed" him on the shoulder with her fist. *Id.* at 29. Officer Brumbaugh testified that he pepper sprayed Williams only after he believed she was assaulting Officer Rollins. *Id.* at 18. Finally, the video and testimony show that Officer Brumbaugh did not pepper spray Williams after she complied with his commands to get on the ground so that he could take her into custody.

Given that the crime at issue was the assault of a law enforcement officer, that Williams continued to resist arrest, and that Officer Brumbaugh did not pepper spray Williams after she was on the ground, Officer Brumbaugh's limited use of pepper spray to effect a lawful arrest was objectively reasonable.

2. **Assault and Battery**

Under Virginia law, a police officer's use of reasonable force to make a lawful arrest is not an assault and battery. *See Broaddus v. Standard Drug Co.*, 179 S.E.2d 497, 503 (Va. 1971). Because, as described above, Officer Brumbaugh's use of pepper spray was objectively reasonable in light of the circumstances of Williams's arrest, his actions did not constitute assault and battery.

## IV. **CONCLUSION**

For these reasons, the Court GRANTS the Defendant's motion for summary judgment and DENIES the Plaintiff's motion to dismiss

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

```
                        /s/
James R. Spencer
Chief United States District Judge
```

ENTERED this  24th    day of May 2011.